I'm sorry, I jumped right in. In Irizarry v. United States, an 11th Circuit case, the question presented is whether federal rule of criminal procedure 32H and the holding and burns of the United States are requiring a court to provide reasonable notice to the parties that it is contemplating a departure from the applicable sentencing guidelines range on a ground not identified by the United States Supreme Court. For example, the court has not made a decision on whether to allow for departure either in the pre-sentence report or in a party's pre-hearing submission. Has any continuing application in light of United States v. Booker? I was not aware of that, Your Honor. You know, we stay in touch because, you know, they're just always reversing us and we just need to know. Right. For what it's worth, it's at 458 Fed 3rd 1208 is the Isizari case that the Supreme Court took cert on. 458 Fed 3rd 1208, 11th Circuit. It's a 2006 case. Obviously, I would argue that it is not a moot issue and that this case should still be remanded to the district court because under the case law and rule 32H, which is still the law of this court in this circuit, notice was not given to Mr. Estrada-Cortez about the large increase in his sentence from 13 months to 36 months. The court did not identify the grounds, either legally or factually, on which it was going to depart until this pronouncing sentence. And when does the court – why does the court have to tell you? Well, I think according to Burns and rule 32, it's the way to test the issues and to provide for the full adversarial system to test whether this is an appropriate departure or not, and also allow the parties to bring their side and their arguments to the issue. Otherwise, defense counsel has to guess that maybe there's a lot of ways the district court can depart. And if the defense counsel has to try to guess and anticipate every single departure, they may bring up issues they don't want to bring up. And they may be – there's just such a vast number that by giving notice, the parties have that adequate notice to present their issues, to have the adversarial system take care of it. And then we know that the system was taken care of and the defendant was given an opportunity to be heard on the issues on which his sentence has now tripled from a 13-month sentence. Well, the sentence hasn't tripled. From 13 months to 36 months. No, no, no. His anticipated sentence has tripled. That's correct. Because the range didn't change, did it? Yes, it did. The range initially – the range in his plea agreement was 12 to 18 months. Oh, the plea agreement. But the range – the penalty range – in other words, if a crime is committed, and if the penalty range is from A to Z or A to D or wherever you want to put it, and the court is somewhere within the A to D range, even if you anticipated he would sentence closer to B and he sentences closer to D, you've got notice because you know the range, don't you? Well, I guess you're talking about the statutory range of what somebody could get. Yes. Yes. What else is there to talk about? Well, then I think the issue is then why would anybody enter into a plea agreement giving up so many rights? I mean, here's a defendant who gave up his right to an indictment, gave up his right to material witnesses, gave up his right to a trial. Do you want us to now say, all right, let's go back and have a trial? Well, I think in this case Mr. Estrada would end up with the same exact sentence and he'd have all his rights protected that way. No, he wouldn't. If you went back and you had a trial, you said, all right, strike everything, let's go and have our – you'd have the range. You'd have whatever the sentencing range. Well, if he was convicted. Yes. I mean, people enter into plea agreements bargaining that may or may not be convicted. I mean, he could go to trial and win and then he wouldn't be sentenced at all. Oh, yeah. But somebody enters into a plea agreement based on a lot of reasons and the government here benefits from the plea agreement and the defendant does not benefit at all because the defendant ends up with the 36 months, which is what he would have gotten post-trial, whereas the government gets the benefit of their bargain by resolving a case quickly, getting a guilty plea, releasing the material witnesses, a whole range of benefits the government is getting where the defendant gets no benefits at all. I take it you're relying on our precedent in Hinojosa? That's correct, Your Honor. Now, in this case, Judge Thompson gave some notice that he was not going to abide by the plea agreement. That's correct. That was at the initial sentencing hearing. And then he said, I'm not going to follow the guidelines on this one, and so make your objections and the like. So all that you didn't get in advance notice was the specific basis for his upward departure. And but for Hinojosa, one might think that under the circumstances, given the extensive criminal history, you would have had a pretty good idea why Judge Thompson was disinclined. Well, I know that he gave a notice in that he was not going to follow the plea agreement, he said. No. But then defense counsel asked, well, can I have a continuance to file objections to the pre-sentence report? And he said, yes, I think that's a good idea, implying that what he was going to do was increase the sentence based on the recommendations in the pre-sentence report, which was not what the judge ended up doing. I see. In sentencing, he decided to do it on, in fact, sustained the objection to the increase requested by probation, and then increased it on other grounds of uncharged conduct under 5K2.21. So defense counsel was on notice to address the issue in the PSR, but not a new issue that didn't come up until sentencing. And then on top of that, the judge then increased it beyond even that sentencing guideline range to a 36-month sentence. What additional arguments would counsel have made had she known that the Court was going to deviate from the guideline range that she wasn't able to make at the sentencing hearing? Well, I'm not exactly sure exactly what she would say, but I think that the issue is not exactly what she would say now, but that she has the opportunity to have notice and have those specific grounds. I mean, there's issues. Obviously, there's the clear and convincing evidence standard issue that was not raised at the district court. She raised the uncharged conduct issue. That's what the departure was based on, uncharged conduct. But so based on that, there's the issue of whether that's even evidence that's sufficient to increase the sentence. So there is the issue that could be raised about you have to use a clear and convincing evidence standard, and whether that evidence of a few statements in the PSR really qualifies for clear and convincing evidence. So that's an issue that didn't get raised. There's other issues pertaining to that conduct, whether that uncharged conduct is even factual. There could be a whole sentencing hearing on all four of those priors to see if there are even, you know, something that you can base it on, whether there's evidence. We are reviewing for plain error on this, are we not? Well, defense counsel feels that the objection was made by the fact that the plea agreement anticipated the 13-month sentence. But I think even under plain error review, that following Evans-Martinez, that the error was plain and it obviously affected the substantial sentence from going from 13 months to 36 months. And following the case of Evans-Martinez, I would say that it's definitely plain error. I'll reserve the rest of my time. All right. Thank you. Good morning, Your Honors. Good morning. May it please the Court, Stuart Young for the United States in this matter. Starting out, I do agree with Judge Smith. This is a review for plain error. Defense counsel did have the opportunity to object to lack of notice at that time. The only thing she did request was that Mr. Estrada-Cortez be advised of his right to appeal his sentence. So starting from that basis, the United States does believe that this is a plain error review standard. So under that standard, why isn't it plain error? Case law is quite specific on that. Well, Your Honor, looking at Evans-Martinez, the United States does feel that there was at least constructive notice given that Judge Thompson would be departing outside the guideline range, specific in the colloquy that he had on. Well, how do you distinguish Hinojosa? I mean, that was the same argument, losing argument, that the government made there. It says the specific ground, not that you might infer it from the general circumstances. Wouldn't the government want to have notice of, you know, hey, I'm not going to go along with something here, so be prepared to argue. We always get complaints that you all come into our courtroom without advance notice on what you have briefed that we are going to be asking you about. At least you know what the issues are. And it seems to me that the logic of the district court, if the district court has in mind a specific ground, specific concern, that the district court says this is why, this is the ground on which I'm thinking of going up. We don't know whether Judge Thompson had that in mind at the time or not. Maybe it was an issue or a question that evolved in his mind. But just as a matter of process, given that this issue is before the Supreme Court, I don't know how it's going to come out, but the logic that drove Hinojosa and Evans-Martinez is that counsel shouldn't have to object to come up with their arguments on the fly on the day of the hearing. And I do agree in principle with that, Your Honor. I would say one thing distinguishing this case is that Judge Thompson did specifically say you should file objections to the pre-sentence report. In the pre-sentence report, the specific types of things that Judge Thompson then did rely on were discussed, including his four prior criminal conduct attacks that included his smuggling of 27 aliens and four different either valid or forged border-crossing cards or laser visas. And so from that perspective, the United States would argue that there was at least this constructive notice that Judge Thompson did say. It's specific in the colloquy on page 42. If Your Honor is not going to follow the plea agreement, then I need to file objections, because even though I had marked it down, the one issue of the increase for number of aliens, and Judge Thompson on page 43 says I'm not, I'm not going to follow the plea agreement, and you should. You should file these objections. Now, it is correct that in the PSR, probation had recommended an increase based on the number of aliens, and that Judge Thompson did actually do a departure either under 4A1.2, which is the uncharged conduct, or, I'm sorry, he, 4A1.2, I apologize, I need to look at my notes for a second, or under 5K2.21, which was a departure to reflect the actual seriousness of the offense based on potential charges not contemplated. But what the United States would argue is that the specific types, the specific things that Judge Thompson did, did consider were in that, were in that pre-sentence report, and that he did then go through the 3553A factors, and based on the 3553A factors, even though it calculated the guidelines correctly, he then stated under the 3553A factors that he was going to sentence Mr. Estrada-Cortez to three years. Now, one of the questions I think possibly facing this Court is how Gall plays into this. Now, what Gall, as I know the panel is aware, has come out and said that the variances or departures, the actual amount of those departures don't matter. Everything is reviewed for a reasonable, abusive discretion. Even more on point, isn't this Erie Zari case that we referred to earlier absolutely right on point in this matter? I agree, Your Honor. The 3rd, 7th, 8th, and 11th Circuits have all come out and said that Burns and 32H do not apply in the post-Booker regime. Well, they may say that, but we don't, and as Zari says, the 9th Circuit doesn't agree with us, and so we don't know whether the newly constituted Supreme Court has suddenly gotten religion as going to say, 11th Circuit, you should have followed the 9th Circuit. You're actually right. They often do. You're absolutely correct, Your Honor. The next sentence I was going to say was the 2nd, 4th, 9th, and 10th Circuits have all come out and said that Burns and 32H do apply. So my questioning, I take your point, but my questioning has been predicated on the notion that the Supreme Court might, it could go either way, I understand that, but might say that the purpose, the rationale of Evans, Martinez, and Hinojosa, at least to have it right, is that it's fair notice to give the defendant and counsel the best shot at making the best argument on what is going to trigger a substantial increase of sentence above and beyond what he motivated his plea agreement. So I'm not sure whether, however the Supreme Court rules, that fundamental fairness concept is what seems relevant to talk about today. Obviously, if the law changes and decides the case for us, then this may be a moot court, but that's why I was focused on the questions that I was asking. And, Your Honor, the best argument the United States can make is that there was at least constructive notice that a departure would come about. The actual notice of whether, that Judge Thompson would, let me rephrase that, Judge Thompson definitely didn't come out and say at the beginning of hearing, I'm going to depart and I'm going to go for, I'm going to give Mr. Estrada-Cortez a three-year sentence, and here are the reasons why. It would have been very nice if he had done that and we would have appreciated that. Unfortunately, he did not do that in this case. And so if Evans-Martinez, it holds that those specific magic words need to be said, then in this case, again, the best argument. I'm not sure that that's what it holds. What it says, I thought, and I was pretty specific to it, that the district judge needs to give notice of the specific ground that he or she is considering departing upward on, so that the defendant, as I said, and counsel have the best shot at making their best argument, rather than having to create it on the day of the hearing. And on whether or not defense counsel had that opportunity to make their best argument, we would argue that they did. If you look at the actual objections that were filed by Mr. Estrada-Cortez, it's labeled as factual objections, and those factual objections are actually legal objections about the use of these prior apprehensions in the PSR. Then, so that's in the record on page 17 through 19. It's actually about a page and a half. But one of those arguments would be that Estrada-Cortez knew exactly what the district judge was contemplating, because these specific, what we characterize as legal objections, but what defense counsel characterizes as factual objections, were actually filed with the court in October before the sentencing hearing. Additionally, it's clear in the record that Estrada-Cortez then talks about these apprehensions during sentencing. In the record on page 47, it states that, she states, this is his first time in custody. He kept trying to come into the United States to work, and he always got caught. In the record on page 47, this is the first time he was prosecuted on page 48. Every time he came to the border, he was stopped, and he just never made it through. He realizes that he had gotten chances in the past. He did not realize what the consequences would be if he were arrested. Was those arguments made before Judge Thompson at the hearing said why he was going to go up? Those arguments were made before Judge Thompson said he was going to go up. Yes, those arguments were made. What happened was Judge Thompson said, I'm sorry, I see my time is up. May I finish? Thank you. What happened was Judge Thompson said, is there anything you'd like to say before I pronounce sentence? And then defense counsel went through this colloquy for a while, from pages 47 to 48 and 49, then gave the defense defendant an opportunity to allocute. And then after that, he started, he went through the guidelines, and then he went through the 3553A factors and actually imposed the three-year sentence at that point. So we would argue that the three-year sentence was a mistake. I would rather not speak for my office as a whole, but I do believe that the 11th Circuit case is directly on point. And if this panel can't overrule a prior opinion of this case. I understand that. If it came out quickly, then I would request that this panel, we believe the 11th Circuit case is a mistake. And if it's not, then I would request that this panel, we believe the 11th Circuit case is directly on point. Well, that may be, but counsel, I mean, the point is, what you would like us to do is agree with you and decide it immediately. And if we're not going to, then presumably you'll wait for the Supreme Court to overrule us. Of course, I would always defer to the panel, Your Honor. Well, I understand that. We're just asking for your position. Okay. Thank you. Thank you, Your Honors. I'd just briefly point out that Hinojosa does say that even if the defendant is aware that the court might depart based on his history, which was discussed in the pre-sentence report and the government sentencing brief, that that's still not enough notice. And so based on that, plus there was other uncharged conduct, which was never discussed, which the judge discussed in the pre-sentence report. And that was a case of some false documents or things that happened at the border that were never tested, discussed, but I think formed the basis for the three-year sentence, which defense counsel never had an opportunity to argue against. I think this case needs to be remanded immediately to test the issues, to allow defense counsel to test the veracity of the uncharged conduct, because we're all assuming that it's true, and there's no evidence that it is. There's just a statement in the PSR. So I think Mr. Estrada has the right for that, would like the opportunity for that. His sentence, he has been in custody for quite a while now, and so if this issue is going to affect his sentence, he would like it to be as soon as possible. I believe his release date is in August, so we'd ask that the case not be stayed. Counsel, could I just ask one other question? You have requested that the, not only that the case be remanded, but that it be sent to a different judge. Yes, Your Honor. Arguing personal bias and so on. What evidence do you have that meets the standard of U.S. v. Payton, one of our Ninth Circuit cases from 2003? I don't find in the record anything that evidences personal bias against him or racially motivated bias. Can you cite me to anything in the record that would contradict that? Your Honor, there is the statement he made in that the America is having a hard problem keeping the flux of people coming in from the Republic of Mexico. Mr. Estrada is one of those people that, you know, has been in custody for quite a while. And you think that meets the standard of Payton? Yes, we do. And we also would say that he is not likely to follow or have respect for plea negotiations, and that's been shown in several cases that have been before this particular court on these same types of cases. And I would ask on that basis that the case be sent to a new judge. Thank you. Is that latter information in the record? Yes. About the other plea agreements, disrespect for plea agreements? Is that in the record? Yes. I think it's an argument made in the briefs, but it's not a statement that Judge Thompson made. It's just I know there's been several similar cases before this court that have been returned to him in the recent past. All right. Thank you. All right. Estrada Cortez is submitted.
judges: Farris, Fisher, Smith